[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 03, 2007
THOMAS K. KAHN
CLERK

No. 06-16043
Non-Argument Calendar

_____

D. C. Docket No. 05-00267-CR-002-KD-B

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLENNON PREYEAR,
JAMES PATRICK PREYEAR

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

**(December 3, 2007)**

Before ANDERSON, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Clennon Preyear and James Preyear appeal their convictions for conspiracy to possess with intent to distribute a controlled substance. See 21 U.S.C. § 846. Clennon argues that the district court abused its discretion by denying his motions to sever. Both James and Clennon argue that there was insufficient evidence to support their convictions. James also argues that the district court erred by admitting into evidence an unsolicited statement about his "extensive [criminal] history" and cocaine found in the ventilation system of the vehicle in which he was stopped. We affirm.

## I. BACKGROUND

Before trial, Clennon moved to sever his trial from that of his co-defendant, James. See Fed. R. Crim. P. 14. The district court denied the motion. At trial, the government sought to establish that James, Clennon, and others were members of a "loose confederation" of individuals who worked together to obtain and distribute cocaine to the area of Monroeville, Alabama.

Louisiana police officer Lanny Bergeron testified that he stopped two vehicles in July 2000. James was a passenger in the first vehicle, and Clennon was a passenger in the second vehicle. Bergeron testified that over a pound of cocaine was found in the rear fender of the first vehicle. Officer Mark Bajat, who participated in the stop of the second vehicle, testified that Clennon denied

2

knowing the occupants of the first vehicle and told Bajat that he was returning from a visit with his mother in Houston, Texas. According to Bajat, Clennon was arrested but not convicted.

The government presented evidence that Clennon and James distributed drugs. Several witnesses, many of them drug dealers, testified that they obtained cocaine and marijuana from both James and Clennon. One witness testified that Clennon and James were "partners."

The government also presented evidence about how Clennon and James obtained drugs. Larry Aquanta Parker testified that he obtained a supply of cocaine in Houston from "middlemen," including Kwasi Johnson, and Parker and Clennon distributed the cocaine in Alabama. Parker testified that he occasionally traveled from Alabama to Houston in a Ford Expedition with Clennon and James. Parker described how, on one trip, he and James "cooked up" and packaged the cocaine using Saran wrap and electrical tape.

Harris County Sheriff Frank Fulbright testified that in February 2004, he noticed an Expedition with Alabama tags parked at a hotel east of Houston. The vehicle was registered at the hotel under James's name. Fulbright volunteered, in the following exchange during direct examination, that James had an "extensive history":

Q: Alright, sir. And then did you – is it your practice to run, say a background check of some kind on these people to see if it's someone that you might know or seen before or somebody else in law enforcement might have seen?

A: Yes.

Q: And what did you do?

A. I ran a criminal history on [James], and found he had an extensive history. As part of my normal procedure I call local agencies, where they're from and find out if anyone there knows them and if they can tell me any details about them.

Q: Without getting into any of those details, who did you talk to back here in this area?

A: Agent Tony Calderaro.

. . . .

Q: Okay. And based upon that conversation with Agent Calderaro, what did you do then?

A: I decided to maintain surveillance on [James] and the vehicle.

Fulbright testified that he observed James at the same hotel on at least three other occasions during a two-month period. On one of these occasions, Clennon was also registered at the hotel. On the last of these occasions, the police stopped James and another individual for a moving violation. Fulbright went to the traffic stop and questioned James. After a drug dog alerted to the vehicle, a physical search revealed only marijuana seeds on the floorboard.

4

The police arrested James and his companion and towed the Expedition to a police garage where a search again revealed no contraband. The police then secured the Expedition at a police impound lot for the weekend, sealed the keys in an envelope, and left the vehicle with the officer in charge. Fulbright and another officer testified that, when they returned on Monday, they saw no evidence that anyone had tampered with the vehicle and keys. The police took the Expedition from the impound lot to a body shop, where a search revealed 718.6 grams of cocaine taped in bundles in the ventilation system. The district court admitted the cocaine over James's objection.

After the government rested its case, Clennon renewed his motion for severance, and the motion was denied. Kwasi Johnson testified for the defense and denied supplying Clennon and Parker with cocaine. Clennon also testified on his own behalf. Clennon denied traveling to Houston to purchase cocaine, denied selling drugs, and denied knowledge of the cocaine found in the car in which James was a passenger during the vehicle stop in 2000.

The jury found Clennon and James guilty of conspiracy to possess with intent to distribute more than fifty grams of cocaine base. Clennon was sentenced to imprisonment for 131 months. James was sentenced to imprisonment for 281 months.

## II.  STANDARDS OF REVIEW

Several standards of review govern this appeal.  We review the ruling of a district court on a severance motion for an abuse of discretion.  United States v. Kennard, 472 F.3d 851, 859 (11th Cir. 2006).  "Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion."  United States v. Russell, 703 F.2d 1243, 1249 (11th Cir. 1983).  "Whether there is sufficient evidence to support a conviction is a question of law which [we] review[] de novo."  United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002).  We view the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor."  United States v. LeCroy, 441 F.3d 914, 924 (11th Cir. 2006).  We "cannot reverse a conviction for insufficiency of the evidence unless . . . we conclude that no reasonable jury could find proof beyond a reasonable doubt."  We review for plain error evidentiary objections not presented to the district court.  See United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007).

## III.  DISCUSSION

Clennon and James present four arguments on appeal.  First, Clennon argues that the district court abused its discretion when it denied his motion to sever.

Second, James argues that the district court abused its discretion when it admitted the cocaine evidence. Third, Clennon and James both challenge the sufficiency of the evidence against them. Finally, James argues that the district court plainly erred when it admitted impermissible character evidence against him. We address each argument in turn.

### A. *The District Court Did Not Abuse Its Discretion When It Denied Clennon's Motion to Sever.*

Clennon argues that the district court abused its discretion when it denied his motion to sever his trial from the trial of James. Clennon contends that the majority of testimony focused on the behavior of James, and that evidence undermined Clennon's credibility and prevented him from having a fair trial. This argument fails.

"To reverse a conviction because of an improper denial of a severance, a defendant must carry the 'heavy burden' of demonstrating that he 'suffered compelling prejudice' and received an unfair trial." United States v. Kennard, 472 F.3d at 858-59 (quoting United States v. Walser, 3 F.3d 380, 386 (11th Cir. 1993)). "A defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants,' . . . even when the disparity is 'enormous.'" United States v. Baker, 432 F.3d 1189, 1236 (11th Cir. 2005) (quoting United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997)).

7

Because Clennon failed to establish that he suffered compelling prejudice from the joint trial with James, the district court did not abuse its discretion when it denied Clennon's motion to sever.

### B. The District Court Did Not Abuse Its Discretion When It Admitted the Cocaine Evidence.

James argues that the district court abused its discretion when it admitted the cocaine found inside the impounded Expedition. According to James, the government failed to prove that it took reasonable precautions to safeguard the Expedition while it was stored over the weekend at a police impound facility. We disagree.

The government authenticated the cocaine through testimony that it was found inside the ventilation system of the Expedition in which James was traveling. See Fed. R. Evid. 901(a), (b). Government witnesses testified that the Expedition was accompanied from the initial stop location to the police garage on Friday, secured at the fenced police impound lot, and remained in the same condition on Monday. We have stated that a "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence." United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985). The defense cross-examined the government witnesses, and the jury was free to determine what weight to assign to the evidence.

8

*C. The Evidence Was Sufficient To Support the Convictions.*

Clennon and James both challenge the sufficiency of the evidence against them. Clennon argues that he presented testimony, including his own, that refuted the testimony offered by the government. Clennon contends that the testimony offered by the government was uncorroborated, and his mere presence at the scene was insufficient to establish his participation in the conspiracy.

James argues that the government failed to establish that he acted in concert with anyone with the purpose of obtaining and distributing cocaine. According to James, although the evidence might support a conviction for possession, there was no evidence either that the trips to Houston were planned with a common scheme, or that money, drugs, or expenses were shared. James argues that the evidence established only that the co-conspirators traveled together.

Viewed in the light most favorable to the government, the evidence is sufficient to uphold both Clennon's and James's convictions for conspiracy to possess with intent to distribute cocaine. Larry Aquanta Parker's testimony supported a determination that he, James, and Clennon obtained their supply of cocaine from a source in Houston and that Parker and Clennon distributed the cocaine back in Alabama. Parker also testified that he and James once "cooked up" and packaged the cocaine using Saran wrap and electrical tape. Although

Clennon argues that he presented testimony that refuted Parker's testimony, the jury was free to believe Parker.

Other evidence bolstered Parker's testimony. This evidence includes testimony that James and Clennon provided others, including dealers, with both crack and powder cocaine; testimony that James and Clennon were "partners"; evidence that in July 2000, police discovered over a pound of cocaine in the first of a two-car caravan in which James and Clennon were traveling; and in 2004, police caught James possessing over 700 grams of cocaine. Moreover, because Clennon testified on his own behalf, the jury was free to disbelieve him and use his testimony as substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). The jury reasonably could have inferred that James, Clennon, and others acted in concert to obtain cocaine from a common source in Houston to distribute in Alabama.

### D. The District Court Did Not Plainly Err When It Admitted Testimony About James's Criminal History.

James argues that the district court plainly erred when it admitted testimony by Sheriff Fulbright that James had an extensive criminal history. Because James did not object to Sheriff Fulbright's testimony, we review for plain error. Although the government did not intentionally elicit information about James's criminal history, James contends that the statement constituted impermissible

character testimony and prevented him from having a fair trial.  See Fed. R. Evid. 404(b).  Again we disagree with James.

The district court did not plainly err by admitting Sheriff Fulbright's statement about James's "extensive [criminal] history."  The statement was not elicited by the government, was a part of Fulbright's narration of events, and was not offered as evidence of James's bad character.  See United States v. Lippner, 676 F.2d 456, 462–63 (11th Cir. 1982).  Although James did not object when Fulbright made the statement and did not request a curative instruction, the district court instructed the jury that evidence of a defendant's criminal convictions "must never be considered as evidence of guilt of the crime for which the defendant is on trial."  Other evidence was sufficient to support James's conviction, and Fulbright's statement did not affect James's substantive rights.

## IV.  CONCLUSION

The convictions of Clennon and James are

**AFFIRMED.**

11